IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARRIE ANNA CRIADO, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:04-CV-141-M |
| v. § | |
| § | |
| SOUTHERN METHODIST UNIVERSITY, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendant Southern Methodist University ("SMU"), filed on May 2, 2005. Upon consideration of the Motion, Response, Reply, the evidence submitted by the parties, and the law applicable to the issues before the Court, the Court finds that the Defendant's Motion should be **DENIED**.

### I. BACKGROUND

In August 1999, Plaintiff Carrie Anna Criado ("Criado"), a female of Hispanic ethnicity, was hired as a Visiting Professor in SMU's Division of Journalism ("the Division"), which includes the Meadows School of the Arts ("Meadows"). She remained in that position for one school year and was then appointed as an Assistant Professor in the Division. That appointment was a three-year tenure-track position, which began in the fall semester of 2000, and ended in

1

the spring semester of 2003. Her employment contract stated that SMU would inform Criado by May 2003 whether it would renew her contract.

On May 19, 2003, Meadows Dean Carole Brandt ("Dean Brandt") notified Criado that her contract would not be renewed. Criado contends that the non-renewal of her contract was due to discrimination based both on her gender and her national origin. Criado also asserts that the non-renewal of her contract was in retaliation for her having engaged in protected conduct.

Criado specifically avers that she was required to teach more classes than similarly situated white male professors. She further alleges that the reasons stated for her non-renewal were pretextual, because they were contrary to the requirements stated in her contract, and because the standards applied to her were inconsistent to those applied to similarly situated males and non-Hispanics.

Criado further contends that she was retaliated against for two incidents when she complained about mistreatment of women and minority professors at SMU. First, while Criado was employed at SMU, the Division experienced several changes in leadership. Ralph Langer, Chris Peck, Jim Goodnight ("Goodnight"), and Tony Pederson ("Pederson") each headed the Division at some point during her tenure. When Peck left the Division in November 2002, Criado's name was placed into consideration for the position of Interim Chair of the Division. Dean Brandt immediately rejected Criado as a candidate for the position. Dean Brandt testified that she refused to consider Criado because of her status as a tenure-track professor, contending that she would never appoint a tenure-track professor to such a position because the added administrative tasks would be so burdensome that it could prevent a tenure-track professor from achieving tenure. Dean Brandt selected Goodnight, a white male whom Criado alleges was less

qualified for the position than she was. Upon learning that she was not selected, Criado sent an email to Dean Brandt, stating that she should have been chosen because her selection "[w]ould have supported the advancement of women and minorities in the roles of leadership at SMU. As it is, key leadership roles in journalism have gone solely to males. . . . This disparate impact is sending strong messages to females and minority faculty about their 'roles' and places at SMU." Def. App. at 150. Dean Brandt responded by email, explaining that "No one is more concerned about the advancement of women and minorities than I am. Never think otherwise. I also do not make leadership appointments to send messages." *Id.*

The second incident alleged as the basis for the retaliation claim relates to the selection of the 2003 Belo Distinguished Chair. Criado was a member of the Belo Chair Selection Committee. During a committee meeting on April 16, 2003, Criado complained that a committee member mistreated an African-American male candidate on the basis of race. The committee ultimately selected Pederson, a white male whom Criado alleges is less qualified than was the African-American candidate passed over by the committee.

On January 26, 2004, Criado filed suit against SMU, alleging gender discrimination, national origin discrimination, and retaliation, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a), and Texas Labor Code § 21.501. SMU subsequently filed the instant Motion, seeking summary judgment in its favor on all of Criado's claims.

## II. ANALYSIS

Summary judgment is warranted when the facts and law as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find

for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemktg. Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-*3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625.  "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).  However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts.  *Lynch*, 140 F.3d at 625.  Further, a party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

A. Discrimination

Criado complains of discrimination on the basis of sex and national origin.  Such discrimination is prohibited by Title VII and the Texas Commission on Human Rights Act ("TCHRA").  *See* 42 U.S.C. § 2000e-2(a)(1) (2005) ("It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . . sex or national origin."); Tex. Lab. Code. Ann. § 21.051(1) (Vernon 2005) ("An employer commits an unlawful employment practice if because of . . . sex [or] national origin . . . the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.").  Criado asserts claims under both Title VII and the TCHRA.  "The Fifth circuit has recognized that discrimination claims under the TCHRA are evaluated using the same analytical framework

set forth in Title VII cases." *Kern v. GE Capital Info. Tech. Solutions*, No. 3:01-CV-2109-P, 2003 U.S. Dist. LEXIS 10797, at *10 n.1 (N.D. Tex. Feb. 19, 2003) (citing *Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001)). Thus, the Court will consider Criado's Title VII and TCHRA claims together. *See id.*

SMU argues that Criado cannot establish a prima facie case of sex or national origin discrimination. "In order to establish a prima facie case of discrimination on the basis of [sex] or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (citing *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001)). The parties agree that Criado is a member of a protected class and that SMU's decision not to renew her contract was an adverse employment action. Def. Br. at 5. SMU disputes Criado's contentions that she was qualified and that another similarly situated individual was treated more favorably than she. In order to avoid summary judgment on her Title VII discrimination claims, Criado must first establish, by a preponderance of the evidence, a prima facie case of discrimination. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973)). "The prima facie case, once established, raises a presumption of discrimination, which [SMU] must rebut by articulating a legitimate, nondiscriminatory reason for its actions." *Id.* at 404 (citing *Meinecke v. H&R Block*, 66 F.3d 77, 83 (5th Cir. 1995)).

6

1. Qualified

Criado alleges that she was qualified for re-appointment because she satisfied the requirements in her contract. Criado's contract stated that SMU placed

> equally high priority on teaching and scholarly/creative accomplishment. In order to achieve tenure, a faculty member must be judged outstanding in one area and very good in the other. This position requires adjudicated scholarly productivity and/or creative activity which should be both ongoing and recognized by distinguished peers in your area of expertise. A faculty member must present evidence of outstanding accomplishments in scholarly/creative accomplishment, not merely promise.

Def. App. at 110. SMU does not dispute Criado's contention that she was a good teacher. Def. Br. at 6. However, SMU contends that Criado's scholarly activities "fell far short of outstanding (or even good, for that matter) as required for the renewal of her contract." *Id.* Criado points out that her contract required "scholarly productivity *and/or* creative activity." Def. App. at 110 (emphasis added). Criado contends that she specifically negotiated for creative activity to be taken into account for purposes of fulfilling her scholarly/creative accomplishment requirement. Pl. Br. at ¶ 3; Pl. App. at 139 ¶ 5. She also states that she presented preliminary research findings at a November 2002 conference, and a paper on those findings at a national convention in July 2003. Pl. Br. at ¶ 5. She further contends that this research "was ripe for additional academic journal submissions." *Id.* Criado had several meetings with a textbook editor in the fall of 2003, in which she discussed developing a textbook, and began drafting such a textbook. As for creative activity, Criado supervised student television productions and served as a faculty director for student programming. Pl. App. at 142 ¶ 10. Criado avers that these activities qualified her for reappointment. Further, Criado claims SMU acknowledged these achievements on March 3, 2003, when Goodnight gave her positive feedback during her one and

7

only performance review. This review stated that Criado "made good progress" toward achieving tenure. *Id.* at 151. It also praised her teaching as "excellent;" as to her research, it stated that she needed to "keep [her] momentum going." *Id.* at 152.

SMU argues that Criado's activities did not reach the level of achievement required of tenure-track professors. It notes that Criado's contract specifically required "adjudicated scholarly productivity and/or creative activity which should be both ongoing and recognized by distinguished peers in your area of expertise." *Id.* At the time of SMU's decision not to renew her contract, Plaintiff had not published in a refereed journal. Def. App. at 17. Criado's contract stated that her research should appear in a nationally respected journal or be presented at a national conference. *Id.* at 111. The contract included a non-exclusive list of nationally respected journals and national conferences. *Id.* SMU further points out that Criado's July 2003 presentation and her fall 2003 discussions with a textbook editor occurred after it told her it would not renew her contract. In addition, SMU claims that, even if Criado's research was "ripe" for academic journal submissions, it would not fulfill the contract's requirement that actual evidence of scholarly accomplishments, not just future promise, must be shown. Criado concedes that no one at SMU ever told her that creative activities alone would satisfy her scholarly/creative accomplishments requirement. *Id.* at 9. However, on its face, the contract seems to allow for creative activity alone to satisfy that requirement.

At the end of three years, Criado's performance was reviewed by a faculty committee. In its April 26, 2003, report to Goodnight, the committee stated that it had "serious concerns about the scholarship challenges that are ahead. Put frankly, Assistant Professor Criado has a monumental task ahead if given approval to move to the second half of her tenure-track

8

process." *Id.* at 121. The committee's vote was split 2-2 on the question of whether to renew Criado's contract. *Id.* Goodnight reviewed the committee's recommendation and recommended to Dean Brandt that Criado's contract be renewed "provid[ed] that she is fully apprised of the monumental task before her if she is to achieve tenure." *Id.* at 122. Dean Brandt decided, contrary to the recommendation of the faculty, that Criado was not making enough progress towards tenure and that her contract should not be renewed. Prior to informing Criado of her decision, Dean Brandt conferred with Greg Warden, Associate Dean for Academic Affairs, and he agreed with her decision not to renew Criado's contract. Def. App. at 55. On May 19, 2003, Dean Brandt informed Criado that her contract would not be renewed. The non-renewal letter stated that

> To date, you have not yet published your research in either the venues listed in your letter of appointment or other venues. It is with the heaviest of hearts that I must conclude that you have not met the "ongoing" expectation or demonstrated "scholarly/creative accomplishment."

Def. App. at 119.

SMU urges that the Court not reexamine SMU's decision as to Criado's qualifications for continuing as a tenure-track professor. It argues that decisions involving tenure are special and vary from university to university such that "[d]etermination of the required [qualifications] in a particular case is not a task for which judicial tribunals seem aptly suited." *Brousard-Norcross v. Augustana Coll. Ass'n,* 935 F.2d 974, 976 n.3 (8th Cir. 1991) (citing *Zahorik v. Cornell Univ.,* 729 F.2d 85, 93 (2d Cir. 1984)). A university's decision not to renew a tenure-track professor's contract is "not, however, exempt from judicial scrutiny under Title VII." *Tanik v. S. Methodist Univ.,* 116 F.3d 775, 776 (5th Cir. 1997) (citing *Zahorik,* 729 F.2d at 92).

9

In this case, Criado has presented evidence of a favorable review only a few weeks before her contract was not renewed and evidence of objective accomplishments that could support a renewal of the contract. Furthermore, Criado showed that renewal was supported by half of the faculty committee and the head of the Division. *See Tanik*, 116 F.3d at 776 (stating that a showing that some significant portion of the departmental faculty supported a tenure decision may help a plaintiff prove a prima facie case). SMU cannot rely its subjective findings to challenge Criado's objective qualifications. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) (stating that subjective criteria may serve as pretext for discrimination). For summary judgment purposes, the Court finds that the evidence put forth by Criado satisfies this element of her prima facie case.

2. Criado proved another similarly situated was treated differently

Criado contends that she was treated differently than other similarly situated white male professors. She notes that Craig Flourney, a white male, taught fewer classes than she and thus he had more time to devote to his research. *See* Def. Br. at 10. She also lists a number of professors whose contracts were renewed despite faculty concern about that professor's research. Pl. Br. at ¶ 23.

SMU points out that there is no evidence as to the sex or national origin of the professors that Criado claims were renewed despite the faculty's research concerns. Also, with the exception of one apparently female professor, all of the professors listed were unanimously recommended for renewal or non-renewal and Dean Brandt followed the committee's recommendation. In that case, the committee was split as to the question of reappointment. Def.

App. at 59. That professor was working on a number of projects at once, but there was concern that her work lacked focus. *Id.* Dean Brandt decided to renew her contract and ultimately she obtained tenure. *Id.*

As to Flourney, SMU points out that he did not have his doctorate at the time he was hired, and thus, he was not a tenure-track professor. Criado presents evidence that his original letter stated that he was hired for a tenure-track position. Def. App. at 112. It was not until the middle of the next school year that SMU discovered that it had given Flourney the incorrect title, and at that time SMU modified his contract to reflect his status as a doctoral candidate. *Id.* at 114. Thus, Criado argues that during his first three semesters at SMU he was similarly situated to her.

"To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)); *see Faulkner v. Ball Corp.*, 4:02-CV-976-Y, 2004 U.S. Dist. LEXIS 18901, *8 (N.D. Tex. Sept. 20, 2004) (stating that a plaintiff must show "at least one" similarly situated employee not in his or her protected class was treated differently to prove this element). Criado has provided evidence that Flourney was originally hired as a tenure-track professor, and that he was required to teach two classes a semester, while she was responsible for teaching three classes each semester. The Court finds that for the first three semesters he was employed at SMU, Flourney was similarly situated to Criado. During that time, Plaintiff's evidence shows that Flourney was given a lighter class load than Criado; therefore, he had more time to devote to his research and writing than did she. For the purposes of summary judgment, the Court finds

that Criado has put forth sufficient evidence to establish that she was treated differently from another tenure-track professor.

Because Criado has presented sufficient evidence as to each element, she has successfully established a prima facie case of gender and national origin discrimination.

        3. Pretext

Because Criado has established a prima facie case of discrimination, she raises a presumption of discrimination. The defendant can rebut this presumption by articulating a legitimate, nondiscriminatory reason for its actions. *Shackelford*, 190 F.3d at 404. This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Dean Brandt states that the "sole reason" for not renewing Criado's contract was that she could not find sufficient achievement that would lead to tenure in three more years; Criado's "trajectory was not high enough." Def. Br. at 16. This reason successfully rebuts Criado's presumption of discrimination; Criado must now prove that the alleged discrimination caused her contract not to be renewed. *See id.*

To defeat summary judgment, Criado must present sufficient evidence to create a genuine issue of material fact that either (1) Defendant's nondiscriminatory reason is not true, but is instead a pretext for discrimination (the "pretext" alternative), or (2) Defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Criado's gender or national origin (the "mixed-motives" alternative). *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Plaintiff need not offer direct evidence to prove either the

mixed-motives alternative, *see Keelan*, 407 F.3d at 341 (citing *Rachid*, 376 F.3d at 311-12), or the pretext alternative, *see Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003); circumstantial evidence will suffice. Criado asserts that her case should be examined under both the mixed-motive and pretext alternatives. The Court will first examine her claims under the "pretext" analysis, and will proceed to the "mixed-motive" analysis, if needed.

The Court uses the *McDonnell Douglas* burden-shifting test to analyze the pretext alternative. *See Smith v. Rumsfeld*, No. 3:03-CV-2933-P, 2005 U.S. Dist. LEXIS 12382, at *13 (N.D. Tex. June 24, 2005) (citing *Machinchick v PB Power, Inc.*, 398 F.3d 345, 349-350 (5th Cir. 2005)).

> To demonstrate pretext, Plaintiff must present evidence to rebut each of the non-discriminatory reasons that Defendant articulates. If the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action. This is because a plaintiff's prima facie case, along with sufficient evidence that the employer's proffered reason is false, may permit a factfinder to infer that the employer intentionally discriminated.

*Id.* at *14-*15 (citations and quotations omitted).

To counter SMU's nondiscriminatory reason, Criado has proffered evidence of a satisfactory review only a few weeks before her contract was not renewed, and evidence that Goodnight and at least half of a faculty committee recommended that SMU renew her contract. First, in Criado's performance review dated March 3, 2003, Goodnight wrote that "You have made good progress on your tenure track during 2002. Your teaching has been excellent, and you have increased your research and publication activity." Pl. App. at 151. Goodnight commented on Criado's "excellent performance" in the teaching arena, and noted that Criado has been "energetic and involved in service to the Division." *Id.* at 151-52. Goodnight's

13

assessment of Criado's research was not as laudatory, but noted some positive "momentum." *Id.* at 152. This review was forwarded to Dean Brandt. *See id.* at 153.

The letter from Criado's review committee, dated April 26, 2003, echoed Goodnight's review. The committee stated that Criado had "major strengths" in her strong teaching abilities and praised her service to the Division. Def. App. at 121. Despite reservations about Criado's research, the committee split "2-2" as to whether her contract should be renewed. In a memorandum addressed to Dean Brandt, dated April 25, 2003, Goodnight recommended renewing Criado's contract, despite stating that "under normal circumstances, Ms. Criado's scholarship and publication record would not warrant renewal." *Id.* at 122. Criado's stated achievements in teaching and service combined with the committee's vote and Goodnight's memorandum create a fact issue as to whether Dean Brandt could have found sufficient achievement in Criado's record that would lead to her tenure in three more years.

The Court must now examine the nature, extent, and quality of the pretext evidence to determine whether a jury could reasonably infer discrimination. *Crawford v. Formosa Plastics*, 234 F.3d 899, 903 (5th Cir. 2000). Criado has presented evidence that three individuals charged with evaluating Criado found that her activities could justify a renewal of her contract. Viewed in the light most favorable to the plaintiff, and combined with Criado's prima facie case, a jury could reasonably infer discrimination from this evidence.

The Court therefore finds that Criado has submitted sufficient evidence of pretext to survive summary judgment on her discrimination claims. SMU's Motion is **DENIED** as to Criado's discrimination claims. Because the Court finds sufficient evidence under the pretext

14

alternative, the Court need not to address Criado's evidence of a mixed-motive decision under *Rachid* and *Desert Palace*.

### B. Retaliation

Criado asserts claims of retaliation under both Title VII and the TCHRA. For reasons stated above, Criado's Title VII and TCHRA retaliation claims will be considered together. *See Kern*, 2003 U.S. Dist. LEXIS 10797, at *10 n 1.

SMU contends that Criado cannot establish a prima facie case of retaliation. "The elements of her prima facie evidentiary showing [of retaliation] are 1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Septimus v. Univ. of Houston*, 399 F.3d 601, 610-11 (5th Cir. 2005). SMU does not dispute that the non-renewal of Criado's contract was an adverse employment action. However, it disputes that she engaged in protected activity and it disputes the existence of a causal link between any protected activity and her non-renewal. If Criado successfully establishes her prima facie case, the burden then shifts to SMU to state a legitimate non-retaliatory reason for its action. At this point, any presumption of retaliation drops from the case, and, to defeat summary judgment, Criado may show that SMU's stated reason is actually a pretext for retaliation. *Id.*

#### 1. Protected Activity

To qualify as a protected activity under Title VII, a complaint must relate clearly to discrimination covered by Title VII. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427

15

(5th Cir. 2000). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc*. 339 F.3d 376, 385 (5th Cir. 2003) (citing *Green v. Adm'rs of the Tulane Educ. Fund,* 284 F.3d 642, 657 (5th Cir. 2002)); *See* 42 U.S.C. § 2000e-3(a) (2005). "To satisfy the 'opposition clause,' [Criado] need not prove that [SMU's] practices were actually unlawful, but only that [s]he had 'a reasonably [sic] belief that the employer was engaged in unlawful employment practices.'" *Byers*, 209 F.3d at 428 (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)).

Criado contends that she engaged in protected activity in two ways. First, Criado alleges that she complained about race discrimination during the spring 2003 meeting discussing the selection of the Belo Distinguished Chair. Second, Criado alleges that she complained about national origin and gender discrimination in an email she sent to Dean Brandt addressing the Dean's selection of the interim chair.

The Court first addresses Criado's complaints regarding the treatment of an African-American candidate for the Belo Distinguished Chair. During one of the meetings of the Belo Chair Selection Committee, a tenured faculty member complained that an African-American candidate was treated unfairly during the search process. During that same meeting, Criado spoke in agreement with that faculty member's comments and urged that the search be reopened to include a more diverse candidate pool. Pl. App. at 146. ¶ 16. In her deposition, Dean Brandt states that Criado complained that the committee's treatment of the African-American candidate was "racist." Pl. App. at 25. Examining only Criado's version of events, Criado did not expressly allege that the treatment of that candidate or the procedures for the search were in any

way unlawful. *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 594 (2d Cir. 1988) (finding that no protected activity occurred when "[t]he essence of appellant's complaints, at the time they were made, was that Columbia was not pursuing affirmative action goals in this selection process"). Despite this, considering Brandt's understanding of Criado's comments, and indulging all appropriate inferences in Criado's favor at this stage of the case, for summary judgment purposes, the Court assumes that Criado's comments opposed apparent racial discrimination by the committee. Because racial discrimination is prohibited by Title VII, Criado's comments constitute protected activity. *See Ackel*, 339 F.3d at 385.

Criado has proffered enough evidence to establish a "causal link." To establish the causation prong of a retaliation claim, the employee need only demonstrate that the employer knew about the protected activity at the time of the adverse employment action. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). Dean Brandt, the SMU employee who decided not to renew Criado's contract, knew of Criado's complaints concerning the Belo Chair selection committee. *See* Pl. App. at 25. Because Criado has proffered evidence showing that Dean Brandt knew of Criado's protected activity at the time she decided not to renew Criado's contract, Criado has established a causal link.

Because Criado established a prima facie case of retaliation, the burden shifts to SMU to state a legitimate non-retaliatory reason for its action. If SMU does so, the presumption of retaliation drops from the case. At this point, Criado may defeat summary judgment by creating

a fact issue as to whether SMU's stated reason is actually a pretext for retaliation. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

SMU's stated nondiscriminatory reason is similar to the one it proffered in an effort to rebut the prima facie discrimination case. SMU avers that Criado did not meet SMU's ongoing expectations of research and publication, nor had she demonstrated the required level of scholarly and/or creative accomplishment. Def. Br. at 30. As before, in the Court's view, Criado's stated achievements in teaching and service combined with the committee's vote and Goodnight's memorandum create a fact issue as to whether she had met the expectations needed to justify a renewal of her contract. Thus, SMU did not establish, as a matter of law, a legitimate nonretaliatory reason for its action.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion is **DENIED**.

**SO ORDERED.**

October 31, 2005.

Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE